JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard
Mike DiGiulio
Leah M. Seliger

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

August 17, 2022

**VIA ECF**

Hon. Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court, Southern District of New York

    Re: *Bossuk v. Augusta Sportswear, Inc., et al.*, No. 21-cv-8273 (VSB)

Dear Judge Gorenstein,

  We represent Plaintiff Richard Bossuk in the above-referenced matter. We write in opposition to Defendants' letter dated August 15, 2022, in which Defendants seek to compel the production of Plaintiff's tax returns from the time prior to the termination of his employment with Defendants. *See* ECF No. 43 (Letter). Defendants' motion to be denied because they have no "compelling need for this information."

  To be clear, this is not the more common situation where a defendant in an employment discrimination action seeks production of the plaintiff's tax returns from the time *after* the plaintiff's termination as relevant to mitigation efforts or a plaintiff's post-termination sources of income. Instead, Defendants assert only that Plaintiff's pre-termination tax returns are relevant and discoverable because he is seeking damages in the form of front pay and "[i]n order to properly calculate any potential recovery of front pay damages, it is necessary [for Defendants] to have an accurate picture of what Bossuk's income was *prior to his termination*." *Id.* at 2 (emphasis added).

  Defendants' assertion that they need Plaintiff's tax returns to determine his pre-termination baseline income for purposes of calculating front pay is absurd. It is well-settled that "[d]ue to the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns, courts have been reluctant to order discovery of tax returns." *Zheng v. Perfect Team Corp.*, 739 Fed App'x 658, 660 (2d Cir. 2018) (summary order). Because "discovery of tax return information presents a delicate situation," the "requesting party bears the burden of establishing both relevancy and a compelling need for the tax returns."[1] *Id.* (cleaned up).

  Here, Plaintiff is seeking front pay damages in the amount of the wages he lost as a result of the discriminatory termination of his employment with Defendants. Defendants know precisely

---

[1] To the extent Defendants argue there is some dispute as to which party bears the burden of showing a compelling need for the tax return information, *see* Defs.' Letter at 2, such a position is inconsistent with the Second Circuit's summary order in *Zheng*, which clearly places the burden on the "requesting party" and was issued several years after *S.E.C. v. Garber*, 990 F. Supp. 2d 462 (S.D.N.Y. 2014), the case on which Defendants rely.

"what Bossuk's income was prior to his termination" – they paid him that income and it is reflected on the W-2s that they issued to him and which they admit are in their possession. *See* Defs.' Letter at 1. Unsurprisingly, where, as here, tax return information is asserted to be relevant to the calculation of damages, a defendant cannot demonstrate a compelling need for such information for any time during which the defendant itself employed the plaintiff. *See Garcia v. Benjamin Grp. Enters.*, 2020 U.S. Dist. LEXIS 50499, at *3 (E.D.N.Y. May 21, 2010) ("As to the plaintiffs' tax returns for the years 2006 through 2008, when the plaintiffs were employed by the defendants, the defendants have wholly failed to show any compelling need. Information concerning each plaintiff's earnings from the defendants in those years is readily obtainable from the W-2s the defendants themselves presumably prepared and supplied to the plaintiffs."); *see also Shannon v. Liberty Mut. Grp., Inc.*, 2021 U.S. Dist LEXIS 119766, at *23-24 (D. Conn. June 28, 2021) (refusing to compel the production of tax returns where defendants had plaintiff's W-2s because "to the extent that the defendant seeks the [tax] documents . . . to defend against a front pay damages claim . . . it has the information it needs to do so"). Defendants' motion should be denied on this ground alone.

Defendants maintain, however, that they do not *really* know what Plaintiff's income was prior to his termination because the W-2s they gave him "only contain his wages received and do not have any information as to the deductions he may have taken to reduce his taxable income" and their expert "has asserted that any calculation involving Bossuk's [pre-termination] income would not be accurate unless his deductions were also considered." Defs.' Letter at 1. This entire argument stems from a false premise devoid of any legal support. In a nutshell, Defendants' position appears to be that the proper measure of calculating the baseline, pre-termination compensation of a W-2 employee is not the total pre-tax wages that employee received from their employer (which is reflected on a W-2) but rather the employee's reduced *taxable income* reported to the IRS *after* any applicable deductions are applied (which would be reflected only on a tax return).

Defendants cite no authority for the proposition that anything other than an employee's pre-tax wages earned is relevant to setting the baseline for front pay damages. *See generally* Defs.' Letter. In fact, the cases Plaintiff could locate all focus on an employee's total pre-termination earnings or wages when calculating the front pay baseline. *See, e.g.*, *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 96 (E.D.N.Y. 2020) (citing cases and explaining that "[a] two-year award of front-pay, based on the differential between plaintiff's past and current earnings, is customary"); *Jones v. Charter Comms. LLC*, 2019 U.S. Dist. LEXIS 67914, at *7-8 (E.D.N.Y. Apr. 18, 2019) ("[U]nder the NYSHRL and NYCRL courts have discretion to award front pay— i.e., the salary and benefits the plaintiff would have received . . . but for the defendant's unlawful conduct."); *Hill v. Airborne Freight Corp.*, 2003 U.S. Dist. LEXIS 2379, at *18 (E.D.N.Y. Feb. 20, 2003) (awarding front pay "representing approximately one year's differential between [the plaintiff's] current and former earnings"); *Buckley v. Reynolds Metals Co.*, 690 F. Supp. 211, 217 (S.D.N.Y. 1988) ("A front pay award for lost salary is calculated by measuring the difference between the amount of salary the plaintiff would have received absent the employer's discrimination and the salary he or she has earned or will earn in his or her present job."); *cf. Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 166 (2d Cir. 1998) (explaining in the context of a backpay award that "[s]uch an award should be based *on what the employee himself would have earned* had he not been discharged" (emphasis added)).

2

Notably, Plaintiff has not discovered (and Defendants have not cited) any case in this Circuit that has calculated a front pay award by reference to the plaintiff's taxable income after deductions rather than by reference to pre-tax earnings. Moreover, the Second Circuit has held that awards of front and back pay are "wages" subject to income and FICA tax withholdings by the employer *at the time the awards are paid*, which further confirms that the awards themselves are to be based on pre-tax earnings. *See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 214-15 (2d Cir. 2012) ("[B]oth back pay and front pay are 'wages' as defined by the Internal Revenue Code. Both are remuneration paid to an employee to compensate for what he would have *earned* had he not been a victim of discrimination. . . . [W]e have no difficulty understanding why [the employer] believed it was obligated to withhold federal and state taxes as well as FICA, as that obligation is implied in a Title VII judgment for back and front pay." (emphasis added)). Accordingly, because the only pre-termination amount relevant to the calculation of any front pay award is Plaintiff's total pre-tax *wages*, and those wages are reflected on the W-2s issued by Defendants, Defendants cannot meet their burden of demonstrating the relevance of Plaintiff's pre-termination tax returns.

Even if Defendants could demonstrate that the tax returns were relevant to the calculation of Plaintiff's pre-termination income, they cannot demonstrate a compelling need for that information for one additional reason: they have not shown that the information they seek is not available via less intrusive means. A compelling need for tax return information exists only when the requesting party demonstrates that the tax information is not otherwise available from "a less intrusive source." *Sandofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008). Such "less intrusive sources" include a plaintiff's deposition testimony. *Id.*

Here, Defendants deposed Plaintiff for some five hours in April 2022 and failed to ask him a single question about any tax deductions he had taken. This failure to ask Plaintiff such questions at deposition precludes Defendants from establishing a compelling need for the tax deduction information now. *See Garcia*, 2020 U.S. Dist. LEXIS 50499, at *3-4 (finding that defendants had not carried their burden to demonstrate compelling need where "they did not even inquire about plaintiffs' earnings in 2009 at the plaintiffs' depositions").

In sum, Defendants' motion should be denied because (1) they are indisputably in possession of all information they need to calculate Plaintiff's pre-termination wages for purposes of front pay calculations; (2) Defendants' assertion that front pay should be calculated based on an employee's taxable income after deductions rather than on pre-tax wages is without foundation in law; and (3) Defendants cannot demonstrate that the information they seek was not available from a less intrusive source than Plaintiff's tax returns.

We thank the Court for its consideration and attention to this matter.

Respectfully submitted,

_/s/D. Maimon Kirschenbaum_
D. Maimon Kirschenbaum